**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

THE CINCINNATI INSURANCE
COMPANY,

      Plaintiff-Counterdefendant,

v.                          Case No:  Case No:  2:12-cv-446-FtM-99SPC

ALBERT SCHORNBERG, CINDY
SCHORNBERG,

      Defendants-Counterplaintiffs,

v.

PANORAMA CUSTOM HOME
BUILDERS, INC.,

      Counterdefendants.

_____/

**ORDER[1]**

    This matter comes before the Court on Plaintiff-Counterdefendant Cincinnati Insurance Company's ("Cincinnati") Motion to Dismiss Count III of the Counterclaim and Supporting Memorandum of Law (Doc. # 21), filed on March 27, 2013.  Defendant-Counterplaintiffs, Albert and Cindy Schornberg ("the Schornbergs"), have responded to the Motion (Doc. # 25).  The Motion is fully briefed and ripe for the Court's review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

**Facts**

In 2004, because of water damage to their residence, the Schornbergs filed a suit in state court against their homebuilder, Panorama Custom Home Builders, Inc. ("Panorama").  The suit alleged breach of contract and breach of implied warranty of habitability, specifically stemming from alleged defects in the construction of the home. Panorama had a $3 million insurance policy with Cincinnati, who took on the costs of defending the suit by means of a reservation of rights (Doc. # 15-1).

In three letters over the course of the litigation, Cincinnati reiterated to Panorama that there may be damages in the suit with the Schornbergs that were not covered by the policy. (Doc. # 15-1,2,3) Nevertheless, Cincinnati arranged for the defense of Panorama, and there is no indication that there was any objection from Panorama about the potential conflict of interest.   At no point in the letters did Cincinnati advise Panorama that it should seek independent counsel because of the potential coverage issues.

On May 21, 2012, the Schornbergs offered to settle for $1,750,000 via a demand for judgment, which was rejected (Doc. # 15-7).  The case proceeded to trial, and on July 12, 2012, the jury returned a verdict of $2,440,958.57 for breach of contract, and $26,230.85 for breach of the implied warranty of habitability, totaling $2,467,189.42.  On August 2, 2012, final judgment was entered against Panorama for $4,065,893.08—an amount that included prejudgment interest—and Panorama's motion for a new trial was denied (Doc. # 15 ¶ 13).  Shortly thereafter, on August 28, 2012, Panorama filed a

notice of appeal, and the appeal is currently pending in the Florida Second District Court of Appeal.[2]

On August 14, 2012, Cincinnati filed the present action for declaratory judgment against Panorama and the Schornbergs, but amended its complaint on October 9, 2012, to remove Panorama from the suit (Doc. # 7).  Cincinnati seeks a declaration from this court pursuant to 28 U.S.C. 2201(a) to determine the extent that damages contained in the state court judgment are covered by the policy between Cincinnati and Panorama.  Specifically, Cincinnati contends that it is not able "to allocate or apportion between damages that may qualify for coverage and those damages that may not be covered" absent a court order (Doc. # 7 ¶ 23).

The Schornbergs answered and counterclaimed on February 20, 2013 (Doc. # 15).  Count III of the counterclaim alleges that Cincinnati engaged in bad-faith conduct during the defense of Panorama.  On March 27, 2013, Cincinnati filed the instant Motion to Dismiss Count III under Federal Rule 12(b)(6) (Doc. # 21).

## Discussion

Cincinnati argues that Count III should be dismissed because the Schornbergs failed to allege a judgment was entered against Panorama in state court in excess of the policy limits (Doc. 21 at 6).  Alternatively, Cincinnati argues that Count III is premature for this Court's review pending Panorama's appeal of the final judgment in the Florida Second District Court of Appeal.  Thus, Cincinnati asks the Court to dismiss or abate Count III pending resolution of the appeal (Doc. # 21 at 10).  The Schornbergs

---

[2] Case No. 2D12-4491 (Doc. 21 at 10 n.8).

respond that Count III properly states a claim for relief and that the bad-faith claim is ripe (Doc. # 25 at 12–13).

When deciding a motion to dismiss under Federal Rule 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs. Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). Under Rule 8, stating a claim upon which relief may be granted requires that enough factual matter is pled to make relief plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 561–63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (aborgating Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Although detailed factual allegations are not required, a plaintiff's obligation to provide the "grounds" of his "entitlement" to relief requires more than labels, conclusions, and a formulaic recitation of the cause of action's elements. Twombly, 550 U.S. 544 at 556, 561–63. Thus, a complaint must state more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1268 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

Additionally, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). Accordingly, the facts as pled must state a claim for relief that is plausible on the face of the pleading. Id. (citing Iqbal, 129 S. Ct. at 1950).

The Court will now consider Count III of the Counterclaim based on the foregoing standards.

### I.  Whether an Excess Judgment was Alleged

In Florida, bad-faith law is concerned with an insured's exposure to an excess judgment:  "The essence of a 'bad faith' insurance suit . . . is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim . . . all of which results in the insured being exposed to an excess judgment."  Wachovia Ins. Serv. v. Toomey, 994 So. 2d 980, 989 (Fla. 2008) (quoting Fidelity & Cas. Co. of New York v. Cope, 462 So. 2d 459, 460 (Fla. 1985)).  Although it is not abundantly clear, Florida common law generally requires an excess judgment—a judgment rendered in excess of the policy limits—to be pled in order to state a claim for third-party bad-faith, subject to a handful of exceptions.  Perera v. U.S. Fidelity & Guar. Co., 35 So. 3d 893, 899 (Fla. 2010).  The exceptions noted by the Florida Supreme Court in Perera do not apply in this case.[3]  Thus, the Court's analysis will focus on whether the Schornbergs have pled that an excess judgment was entered in the state proceeding.

Cincinnati's chief argument is that the Schornbergs did not state a cause of action for bad-faith because they failed to allege that the judgment secured was in excess of the $3 million policy limit (Doc. # 21 at 6).  The Court disagrees with Cincinnati's reading and finds that the Schornbergs did allege that a judgment was rendered in excess of the policy limits.  On the face of the Counterclaim, Paragraph 13 alleges that the $2,467,189.42 verdict was combined with $1,598,793.66 in prejudgment

---

[3] It is important to note that the court was careful not to limit the circumstances in which bad faith claims can be brought:  "We do not intend to limit the types of bad-faith claims that may be brought in other cases to only the case law discussed in this opinion.  We discuss the case law only to determine whether the principles from prior bad-faith case law may be relevant to the facts of this case."  Perera, 35 So. 3d at 898 n.7.

The exceptions to the excess judgment rule that the court recognized were:  (1) so-called "Cunningham agreements," in which an insurer and a third-party claimant stipulate that bad-faith issues will be resolved first, and if no bad-faith is found, the parties will settle within the policy limits, id. at 899; (2) certain settlement agreements between the insured and the third party, id.; and (3) instances in which an excess carrier is involved and equitable subrogation issues are implicated, id.

interest when the trial court entered final judgment against Panorama in the amount of $4,065,893.08 (Doc. # 15 ¶ 13).[4]   In addition, Paragraph 20 alleges that the policy covered $3 million (Doc. # 15 ¶ 20).   Both paragraphs were properly incorporated in Count III via Paragraph 48 (Doc. # 15 ¶ 48).   Therefore, the Schornbergs have pled that the final judgment of $4,065,893.08 exceeds the $3 million policy limit.

Cincinnati focuses too narrowly on the jury verdict.  Although some cases define an "excess judgment" as "the difference between all available insurance coverage and the amount of the verdict recovered by the injured party," Perera, 35 So. 3d at 902 (quoting United Services Auto. Ass'n v. Jennings, 731 So. 2d 1258, 1259 n.2 (Fla. 1999)), the bad-faith statute states:  "The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation . . . and may include an award or judgment in an amount that exceeds the policy limits."  Fla. Stat. § 624.155.

Further, other cases establish that when prejudgment interest is included in a final judgment, it becomes an indistinguishable part of the judgment.  In Quality Engineered Installation, Inc. v. Higley South, Inc., the Florida Supreme Court stated that "prejudgment interest becomes part of a single total sum adjudged to be due and owing. The amount awarded for prejudgment interest, like all other components of the 'judgment,' automatically bears interest . . . ." 670 So. 2d 929, 931 (Fla. 1996) (holding prejudgment interest combined with a verdict properly bears interest for purposes of calculating post-judgment interest).

---

[4] A copy of the order of final judgment is not before the Court.

Accordingly, despite the fact that the verdict fell within the $3 million policy limits, the Court finds that the Schornbergs successfully pled that final judgment was entered $1,065,893.08 in excess of that policy when prejudgment interest was combined with the verdict in the order of final judgment against Panorama.

## II. Whether Abatement is Proper

Cincinnati alternatively argues that the bad-faith claim is premature pending Panorama's appeal of the final judgment in the Second District Court of Appeal, and moves to dismiss or alternatively abate Count III until resolution of the appeal (Doc. 21 at 10).

In Denis v. Commerce Ins. Co., the Court stated:  "Federal courts interpreting Florida law have applied the rule that bad faith litigation is premature while appeals are pending." 2010 WL 374769, at *1 (S.D. Fla. 2010) (citing Page v. QBE Ins. Corp., 2009 WL 1025716, at *2 (S.D. Fla. 2009)); see also Romano v. American Cas. Co. of Reading, Pa., 834 F.2d 968, 970 (11th Cir. 1987) (noting Eleventh Circuit "requires that the appellate process be complete before the cause of action for bad faith insurance practices is ripe").  Florida law provides that a bad faith claim cannot be prosecuted prior to its accrual. Bolen v. Illinois Nat. Ins. Co., 2012 WL 4856753 *3 (M.D. Fla. October 12, 2012) (citing Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So. 2d 1289, 1291 (Fla.1991)). Accrual requires a determination of liability and damages, and the resolution of all appeals. Bolen, 2012 WL 4856753 at *3; see also Daggett v. Am. Sec. Ins. Co., 2008 WL 1776576, at *3 (M.D. Fla. April 17, 2008).

Courts in Florida have recognized that abatement is proper when bad-faith is not the only issue being litigated in a case, and the bad-faith claim is premature during an

appeal in state court.  Denis, 2010 WL 374769, at *1; O'Rourke v. Provident Life & Acc. Ins. Co., 48 F. Supp. 2d 1383, 1385 (S.D. Fla. 1999) ("[T]he doctrine of abatement offers courts an opportunity to maintain a narrow focus on matters currently at issue, while preserving premature issues for future review if and when such issues ripen.").

The Court finds that Count III is not ripe until final resolution of the state proceedings between the Schornbergs and Panorama.  Indeed, if the judgment below is reversed, "the basis for [the] bad faith action will have dissipated, [and the] entire claim will be extinguished."  Romano, 834 F.2d at 970.  Because the Schornberg's bad-faith claim against Cincinnati has not accrued during the pendency of Panorama's appeal, Count III will be abated until a decision is rendered in the Second District Court of Appeal.

Accordingly, it is now **ORDERED:**

Counterdefendant Cincinnati Insurance Company's Motion to Dismiss Count III of the Counterclaim (Doc. #21) is **DENIED**, and Cincinnati's alternative motion to abate Count III is **GRANTED**.  The Counterplaintiffs, Albert and Cindy Schornberg, are hereby directed to inform this Court within ten (10) days of the Second District Court of Appeal's decision, and if necessary, to move the Court to lift the abatement.

**DONE** and **ORDERED** in Fort Myers, Florida this 16th day of July, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record